**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JENAE S. ASIRE, an individual, | |
| Plaintiff, | Case No. 3:20-CV-00039-RCJ-CBL |
| vs. | **ORDER** |
| CARSON CITY SCHOOL DISTRICT and RICHARD STOKES, an individual, | |
| Defendants. | |

Plaintiff brings this suit alleging employment claims and breach of a settlement agreement. However, the agreement dictates that Plaintiff has waived the employment claims and must arbitrate any disputes arising under it. Thus, the Court dismisses the claims and orders the clerk to close the case.

**FACTUAL BACKGROUND**

The allegations in the complaint are as follows: Plaintiff accepted employment as an administrative employee with Defendant Carson City School District in 2013. In the following years, Plaintiff received a promotion and enjoyed a good working relationship with her superiors. Plaintiff also received multiple laudatory performance appraisals. In 2018, Plaintiff's first and second level supervisors retired. Plaintiff then began experiencing discriminatory treatment from

the new supervisors, culminating in her termination in 2019. After review, the School District

Board and Defendant Stokes rescinded the termination and replaced it with a three-day suspension

without pay. However, Plaintiff refused to accept her job back, claiming a toxic work environment

resulting in a constructive discharge. Following negotiations, the parties reached a settlement

agreement.

According to the agreement, Defendants provided Plaintiff $10,000, (ECF No. 9 Ex. 1 at

¶ 2), and agreed not to publish disparaging statements, (*id.* at ¶ 3). In exchange, Plaintiff agreed to

unconditionally release "any and all claims, complaints, demands, and causes of action of any kind

whatsoever, whether known or unknown, patent or latent, which [Plaintiff] may now or hereafter

have or claim to have against [Defendants]," except that the contract carves out claims "seeking

to enforce the provisions of this Agreement" from the global release. (*Id.* at ¶ 5.) The agreement

also includes, among other things, an arbitration clause, which states:

> DISPUTE RESOLUTION; WAIVER OF RIGHT TO JURY TRIAL. [Plaintiff]
> and [Defendants] agree that in the event of any disputes arising from this
> Agreement which the parties cannot resolve through good faith mediation, such
> dispute shall be arbitrated pursuant to the American Arbitration Associations'
> National Rules for the Resolution of Employment Disputes. Such arbitration shall
> be final and binding upon [Plaintiff] and [Defendants]. [Plaintiff] and [Defendants]
> further agree that in any such dispute, venue shall be in Carson City, Nevada, and
> the prevailing party shall be entitled to an award of all costs and fees, including
> arbitration costs, experts' fees, and reasonable attorney's fees, taxable costs
> incurred in connection with such action, in addition to any other relief permitted by
> law or equity. THE PARTIES SPECIFICALLY AGREE AND HEREBY
> KNOWINGLY AND INTENTIONALLY WAIVE THEIR RIGHT TO A TRIAL
> BY JURY OF ANY DISPUTE ARISING OR RESULTING FROM THIS
> AGREEMENT OR THE FACTS AND CIRCUMSTANCES RELATING
> HERETO.

(*Id.* at ¶ 8.) Additionally, both parties agreed to keep the terms of the agreement confidential. (*Id.*

at ¶ 4). Plaintiff and Defendant Stokes both initialed next to the arbitration clause and signed the

agreement at the bottom.

///

The allegations continue: Despite the confidentiality clause, Defendants later provided the Nevada Department of Employment, Training, and Rehabilitation (DETR) with a full, unredacted copy of the agreement, resulting in DETR denying Plaintiff unemployment benefits. Defendants admitted that this was an error but could not remedy it.

Plaintiff then brought this suit *pro se*, raising six causes of action: constructive discharge, breach of the settlement agreement, breach of the implied duty of good faith and fair dealing regarding the agreement, negligently failing to comply with the duties imposed by the agreement, breach of the implied duty of good faith and fair dealing regarding her employment contract, and breach of the employment contract. Defendants move to dismiss, arguing the agreement precludes Plaintiff's claims based upon the underlying conduct and mandates arbitration for the other claims.

## LEGAL STANDARD

Federal courts sitting in diversity, that is, where a "matter[] [is not] governed by the Federal Constitution or by acts of Congress," apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Therefore, the Court applies Nevada contract law in the instant case. Under Nevada law, arbitration agreements are presumptively "valid, enforceable[,] and irrevocable except as otherwise provided in NRS 597.995 or upon a ground that exists at law or in equity for the revocation of a contract." NRS 38.219(1). Grounds that exist at law or equity include, but are not limited to, unconscionability, duress, and fraud. *Cf. U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (Nev. 2018) (noting these same grounds are included under the substantially-similar language of the FAA).

"As a matter of public policy, Nevada courts encourage arbitration and liberally construe arbitration clauses in favor of granting arbitration." *Tallman v. Eighth Judicial Dist. Court*, 359 P.3d 113, 119 (Nev. 2015) (quoting *State ex rel. Masto v. Second Judicial Dist. Court ex rel. Cty. of Washoe*, 199 P.3d 828, 832 (Nev. 2009)). "Although the party seeking to enforce an arbitration

clause bears the burden of proving the clause's valid existence, any party opposing arbitration must establish a defense to enforcement." *Gonski v. Second Judcial Dist. Court ex rel. Cty. of Washoe*, 245 P.3d 1164, 1169 (Nev. 2010), *overruled on other grounds by Home Corp.*, 415 P.3d at 42 (citing *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004), *overruled on other grounds by Home Corp.*, 415 P.3d at 42).

## ANALYSIS

The Court finds the arbitration clause to be valid and enforceable, and therefore dismisses Plaintiff's complaint without prejudice so that the parties may proceed in arbitration. While dismissal of Plaintiff's complaint moots many of the outstanding motions, it does not moot Plaintiff's motion for leave to supplement the record nor Plaintiff's motion for sanctions; consequently, the Court also addresses the merits of those motions.

### I.    *Plaintiff's Motion to Supplement the Record (ECF No. 8)*

Plaintiff requests leave of the Court to supplement the record because her "Complaint did not contain points and authorities [as required by the Local Rules,]" "in the interests of justice, efficiency and clarity of the material facts[,]" "and in anticipation of [Fed. R. Civ. P.] 12 challenges." (ECF No. 8 at 1.) The Court denies Plaintiff's motion. Points and authorities must be attached to motions and related responsive filings—not complaints. LR 7-2(b), (d). A supplement is also not an appropriate vehicle to guard against Rule 12 challenges. If Plaintiff felt her complaint was insufficient, she should have sought to amend it through the procedures provided by Fed. R. Civ. P. 15. If, on the other hand, Plaintiff felt her complaint was sufficient to withstand a Rule 12 motion, she could simply argue so in her response to the motion.

///

///

///

## II.    Defendants' Motion to Dismiss (ECF No. 9)

Defendants argue dismissal is proper because the claims regarding the agreement are subject to a binding arbitration clause and Plaintiff waived the claims regarding the alleged violations of the underlying employment contract. The Court agrees.

### a.   The Arbitration Clause is Valid and Enforceable

#### 1.   The Federal Arbitration Act (FAA) is Not Applicable

Initially, Defendants claim that the arbitrability of this dispute is governed by the FAA and Nevada state law. However, review of the agreement shows that it does not explicitly mention the FAA. Such a defect is not dispositive, for "the FAA applies to contracts 'evidencing a transaction involving [interstate] commerce.'" *Home Corp.*, 415 P.3d at 38 (alteration in original) (quoting 9 U.S.C. § 2). That is, the FAA applies if the contractual "transaction affects or involves interstate commerce [such that] Congress could regulate the transaction through the Commerce Clause." *Home Corp.*, 415 P.3d at 38 (citing *Allied-Bruce Cos., Inc. v. Dobson*, 513 U.S. 265, 273–75 (1995)). That is not the case here.

The purview of the Commerce Clause covers three different categories: (1) the channels and instrumentalities of interstate travel, (2) goods or services that travel in interstate commerce, or (3) when the aggregate effect of an activity may substantially affect interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 16 (2005). As the underlying activity here was Plaintiff's employment and subsequent dismissal, only the third category is implicated. While the act of hiring and firing an employee could theoretically be considered "an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce," *United States v. Lopez*, 514 U.S. 549, 567 (1995), such a ruling would stretch the already expansive limits of Commerce Clause jurisprudence. Consequently, the FAA does not apply to the contract at issue and this Court must apply Nevada law.

Defendants first ask this Court to find all of Plaintiff's claims barred by the existing agreement. However, the Court may not analyze the merits until after it has dealt with the question of arbitrability. As noted above, Nevada provides a presumption of validity for arbitration clauses, but that presumption may be overcome by certain defenses. Although Plaintiff raises many defenses in her response to Defendants' motion, only one falls into that category: unconscionability.

2.   The Agreement and Arbitration Clause are Consciable

"Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." *Home Corp*, 415 P.3d at 40. Procedural unconscionability exists "when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power . . . or because the clause and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton,* 96 P.3d at 1162. "[S]ubstantive unconscionability focuses on the one-sidedness of the contract terms." *Id.* at 1162–63 (quoting *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003)). That is, "courts [analyzing substantive unconscionability] look for terms that are 'oppressive.'" *Gonski*, 245 P.3d at 1169 (quoting *Burch v. Second Judicial Dist. Court ex rel. Cty. of Washoe*, 49 P.3d 647, 651 (Nev. 2002)).

Plaintiff asserts several contentions in favor of procedural unconscionability. Specifically, she points to Defendants' greater bargaining power to draft the terms in their favor as well as their failure to reference, explain, or attach the FAA and American Arbitration Association's National Rules for the Resolution of Employment Disputes (NRRED) to the agreement. She further claims that the contract was vague leading to undue surprise.

As the FAA does not apply, failure to attach it to the agreement is immaterial. Turning to the NRRED, Plaintiff does not point to any part of these rules as being unconscionable or even allege the rules were not available to her. Rather, she merely complains that Defendants

incorporated the rules by reference without attaching them to the agreement. She provides no case finding such incorporation unconscionable. Indeed, the Ninth Circuit has found that incorporating these rules by reference is consionable (albeit applying California law). *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017). Likewise, the Court finds that the incorporation of these rules by reference, without more, fails to constitute procedural unconscionability.

Accepting, *arguendo*, Plaintiff's allegation of disparity in the bargaining power, such disparity alone is not sufficient to find unconscionability. *See, e.g.*, Restatement (Second) of Contracts § 208 ("A bargain is not unconscionable merely because the parties to it are unequal in bargaining position."). The mere fact that Defendants drafted a proposed settlement does not mean that Plaintiff was forced to accept the conditions without negotiation—this was not a contract of adhesion. This is especially true where, as here, Plaintiff is not the average layperson. Instead she is an experienced and qualified administrator who, at one point and among other things, "was responsible for all of the school's state and federal CTE grants, including oversight, compliance and reporting of grant-related information." (ECF No. 1 at ¶ 14.)

Additionally, Plaintiff's argument that the language was so vague that she was "subject to unreasonable surprise," (ECF No. 13 at 15), and not "give[n] sufficient notice," (ECF No. 13 at 18), is unavailing. The plain language of the agreement informs Plaintiff of the requirement for arbitration, the venue for such, and the fee structure, as well as the waiver of trial by jury. *See Campanelli v. Conservas Altamira, S.A.*, 477 P.2d 870, 872 (Nev. 1970) ("Parties to a[n] [unambiguously-]written arbitration agreement are bound by its conditions regardless of their subjective beliefs at the time the agreement was executed.").

Furthermore, other indications of procedural unconscionability, such as where there were "an unreasonable amount of papers to review" or that Plaintiff was "rushed or did not have time to read over the[] document," *CVSM, LLC v. Doe Dancer V*, No. 72627 (Nev. Feb. 25, 2019), are

not present in the instant case. Rather, the agreement was four pages long and, by its terms, explicitly gave Plaintiff the opportunity to consult with an attorney on its propriety, (ECF No. 9 Ex. 1 at 4). Nor would enforcing the terms as written "allow[] [Defendants] to avoid liability." (ECF No. 13 at 17.) Much like a judge, an arbitrator is a neutral entity whose purpose is to fairly resolve all claims. Therefore, if Defendants are liable for Plaintiff's claimed injuries, the arbitrator will so find. The arbitration clause also states that "the prevailing party shall be entitled to an award of *all* costs and fees." (ECF No. 9 Ex. 1 at ¶ 8 (emphasis added).) Consequently, should Plaintiff prove successful in arbitration, her award will not be lessened by incurred costs.

Finally, the phrase "[s]uch arbitration shall be final and binding upon [Plaintiff] and [Defendants]," (*id.*), does not prevent review of the arbitration should Plaintiff challenge the arbitrator's findings under 9 U.S.C. §§ 11–12, which allow a court to vacate or modify any arbitration award that meets certain statutory requirements, or any other relevant statutes. Thus, the Court finds the agreement conscionable under Nevada law because Plaintiff cannot demonstrate procedural unconscionability. *See Home Corp.*, 415 P.3d at 42 ("We do not address substantive unconscionability, since both must exist to invalidate a contract as unconscionable.") (citing *Burch*, 49 P.3d at 650).

### 3. Plaintiff's Allegations of Material Breach Do Not Excuse Arbitration

Lastly, Plaintiff seeks to avoid arbitration by alleging that Defendants materially breached the contract. A material breach of contract can excuse non-performance by the other party. *Martin Bloom Assocs., Inc. v. Manzie*, 389 F. Supp. 848, 853 (D. Nev. 1975) (citing Restatement of Contracts § 274). However, breaches of other portions of a contract are insufficient to excuse noncompliance with arbitration provisions. *See, e.g.*, *Local Union No. 721, United Packinghouse, Food & Allied Workers, AFL-CIO v. Needham Packing Co.*, 376 U.S. 247, 251–52 (1964) ("Arbitration provisions, which themselves have not been repudiated, are meant to survive

breaches of contract, in many contexts, even total breach . . . ."); *cf. Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1011 (9th Cir. 2005) (holding that the defendant could not invoke the arbitration clause because it "breached the arbitration agreement itself by [previously] refusing to arbitrate"). Thus, the Court finds that Defendants' alleged breach of the contract does not merit noncompliance with the arbitration clause.

On a similar note, Plaintiff seems to argue in her brief (but not her complaint) that there are sufficient grounds to rescind the entire contract. (*See, e.g.*, ECF No. 19 at 22 (concluding that the agreement is unenforceable because the "confidentiality and not-to-contest promises [which Defendants breached] . . . went to the very root of the agreement.") (capitalizations omitted).) However, while rescission would void the agreement, the modern trend is for courts to interpret arbitration agreements as separable—thus, unassailable by rescission of the contract in general. *See* Martin Domke et al., *Domke on Com. Arb.* § 11:5 (2020).

Nevada has followed this trend and amended its statute to remove "rescission" as a ground for avoiding an arbitration clause. *Compare Dodd v. Cowgill*, 463 P.2d 482, 490 (Nev. 1969) ("[N]o party shall have the power to revoke the submission [to arbitration] without the consent of the other party or parties to the submission save upon such grounds as exist in law or equity for the *rescission* or revocation of any contract.") (emphasis added) (quoting NRS 38.030 (repealed 1969)) *with* NRS 38.219(1) ("An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable[,] and irrevocable except as otherwise provided in NRS 597.995 or upon a ground that exists at law or in equity for the revocation of a contract."). Additionally, NRS 38.219 is a verbatim adoption of the Revised Uniform Arbitration Act, Section 6, whose drafters endorsed the doctrine of separability. Revised Uniform Arbitration Act § 6 cmt. 4 (Unif. Law Comm'n 2000).

///

Reinforcing this Court's holding, at least one case from this District held that a party "cannot avoid arbitration by simply asserting that he has rescinded the [contract]." *Campbell v. Nevada Prop. 1 LLC*, No. 2:10-CV-02169-RLH, 2011 WL 4958442, at *1 (D. Nev. Oct. 18, 2011) (applying Nevada law). Thus, the Court finds that Plaintiff cannot escape arbitration—even if rescission is somehow appropriate.

### b.  Scope of the Arbitration Clause

The arbitration clause mandates that "in the event of any disputes arising from this Agreement which the parties cannot resolve through good faith mediation, such dispute shall be arbitrated." (ECF No. 9 Ex. 1 at ¶ 8.) In her second, third, and fourth causes of action, Plaintiff respectively alleges that Defendants breached the agreement, breached the duty of good faith and fair dealing implied by that contract, and negligently breached the duties imposed by the agreement. These claims and any potential claim for rescission arise from the agreement and, therefore, the Court does not address their merits as they are subject to mandatory arbitration.

However, the Court finds that the other claims (the first, fifth, and sixth causes of action) are not based upon the agreement—but, rather, relate to the termination of her employment. As such, they do not "arise from" the agreement and are not within the scope of the arbitration clause. *Cf. Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (holding that a cause of action does not "arise under" under federal law because of an anticipated federal defense, in the context of federal question jurisdiction).[1] Further supporting the exclusion of these claims from the arbitration clause, the agreement reads, "The parties specifically agree and hereby knowingly and intentionally wave their right to a trial by jury of any dispute arising or resulting from this agreement or the facts and circumstances relating hereto." (ECF No. 9 Ex. 1 at ¶ 8 (emphasis

---

[1] A dispute over the interpretation of the release clause as it applies to Claims 1, 5, and 6, would be an issue for arbitration. However, if any dispute over the interpretation of the clause exists, it has not been presented to this Court.

omitted).) In interpreting a contract, a court should attempt to give harmonious, reasonable meaning to all of the provisions of the contract. *Quirrion v. Sherman*, 846 P.2d 1051, 1053 (Nev. 1993). If "disputes arising from this Agreement" included the underlying claims, that would render the phrase "or resulting from this agreement or the facts and circumstances relating hereto" to be meaningless.

Finally, rescission is a dispute that must be litigated before an arbitrator. *See, e.g.*, 6 C.J.S. *Arbitration* § 21 (2020) ("A controversy over whether one party may avoid or rescind a contract containing an arbitration provision is subject to arbitration."). Therefore, the Court does not address its merits. However, if an arbitrator rules that rescission is appropriate in this case, Plaintiff could raise these causes of action. Thus, the Court dismisses these claims without prejudice.

### c. The Court Denies Plaintiff Leave to Amend

Upon granting a motion to dismiss, a court must then determine whether to allow leave to amend the complaint. Leave to amend should be granted unless "amendment would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990)). That is, dismissal without leave to amend is appropriate only where "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)). Here, the Court finds that no combination of facts would allow Plaintiff's claims to survive the agreement, absent rescission. Therefore, amendment would be futile.

### III.  Plaintiff's Motion for Sanctions (ECF No. 22)

Plaintiff moves this Court to impose sanctions on Defendants and their counsel for multiple alleged improprieties. The Court finds that none of the alleged conduct rises to the level of requiring sanctions, and therefore denies Plaintiff's motion.

///

Plaintiff first argues that counsel made fraudulent statements to the Court in violation of the Nevada Rules of Professional Conduct. In Nevada, attorneys are prohibited from "knowingly mak[ing] a false statement of fact or law to a tribunal." Nev. Rules of Prof'l Conduct r. 3.3(a). "'Knowingly' . . . denotes actual knowledge of the fact in question." Nev Rules of Prof'l Conduct r. 1.0(f). "By presenting to the court a . . . written motion[,] . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b).

Plaintiff alleges that counsel attempted to mislead the Court in arguing that the agreement had been initialed and approved by Plaintiff's attorney during the settlement negotiations. Plaintiff contends that this is demonstrably false because the initials on the agreement above the line designated "Approved: Attorney for [Plaintiff]" are actually her own. Consequently, according to Plaintiff, "[e]ven the most basic due diligence owed to a client by a licensed attorney would have revealed this discrepancy long before filing a false statement." (ECF No. 22 at 5.)

Plaintiff is incorrect because, as there are initials in the space marked "Approved: Attorney for [Plaintiff]," the assumption that the initials belong to an attorney is a reasonable one. The Court does not expect counsel to engage in forensic handwriting analysis—such would be well beyond the reasonable inquiry required. Therefore, counsel's allegations, even if eventually proven incorrect, had evidentiary support and were formed after a reasonable inquiry. Thus, sanctions are not warranted.

Plaintiff next argues that counsel should be sanctioned for her "callous, unprofessional taunts and threats." (ECF No. 22 at 6.) Specifically, Plaintiff objects to an email sent by counsel which contained the following language:

> However, in the interest of "professionalism and mutual respect," while I do not have authority to officially make this offer to you, I would be willing to discuss with my clients a stipulation for you to dismiss your lawsuit with prejudice, with each to pay its own attorney's fees and costs. In other words, if my client agreed, we would consider allowing you to withdraw your lawsuit and we would not seek attorney's fees and costs from you. Let me know if you would like me to take that proposal to my clients.

(ECF No. 22 Ex. 1 at 3.) However, this language is neither threatening nor improper. Counsel is correct that she does not have the authority to make a settlement offer prior to consulting with her clients. *See* Nev. Rules of Prof'l Conduct r. 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter."). Nevertheless, counsel is permitted to engage in preliminary negotiations to determine what the opposing party is willing to agree to so that she can better advise her clients and may relay the results of such negotiations to her clients for their approval. *See id.* ("A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation."). Consequently, counsel's conduct is proper, and sanctions are not warranted.

Finally, Plaintiff argues that sanctions should be awarded because counsel has "knowingly filed a series of frivolous procedural motions to avoid the merits of this case." (ECF No. 22 at 7.) At the time of Plaintiff's motion for sanctions, Defendant had only filed two motions: the motion to dismiss, (ECF No. 9), and a motion to strike Plaintiff's motion to supplement, (ECF No. 14). Neither motion is frivolous. The Court largely grants the motion to dismiss in this order—a meritorious motion is not frivolous. As to the motion to strike, the Court also noted that the motion to supplement was improper. Consequently, sanctions are not warranted.

///

///

///

///

1   ///

2   ///

3                              **CONCLUSION**

4          IT IS HEREBY ORDERED that Plaintiff's Motion to Supplement the Record with

5   Statement of Points and Authorities (ECF No. 8) is DENIED.

6          IT IS FURTHER ORDERED that Defendants' Motion to Dismiss and Compel Arbitration,

7   or Alternatively, to Stay Proceedings (ECF No. 9) is GRANTED IN PART AND DENIED IN

8   PART.

9          IT IS FURTHER ORDERED that Plaintiff's Complaint (ECF No. 1) is DISMISSED

10  WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND.

11         IT IS FURTHER ORDERED that if Plaintiff wishes to pursue her Second, Third, and

12  Fourth Causes of Action, she must do so through arbitration in compliance with Paragraph 8 of

13  the agreement.

14         IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions (ECF No. 22) is

15  DENIED.

16         IT IS FURTHER ORDERED that all remaining outstanding motions are DENIED AS

17  MOOT.

18         IT IS FURTHER ORDERED that the clerk shall close this case.

19  IT IS SO ORDERED.

20  Dated July 8, 2020.

21

22  _____

23                  ROBERT C. JONES
                United States District Judge

24